# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHERRY DAY,

    Plaintiff,

v.                              No. CIV-01-1123 WJ/KBM

WESTINGHOUSE GOVERNMENT
ENVIRONMENTAL SERVICES
COMPANY, LLC, and WAYNE CAPLINGER,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment [Docket No. 23]. Having reviewed the submissions of the parties and the applicable law, the Court finds that the motion shall be denied as further explained below.

**FACTUAL AND PROCEDURAL HISTORY**

Assuming the facts in a light most favorable to Plaintiff Sherry Day, she was hired by Westinghouse in 1992 to work in an auditor position. Plaintiff continues to work for Westinghouse. She attended new-hire orientation in 1992, received a copy of the Westinghouse Sexual Harassment Policy, and was trained on the policy at that time. Plaintiff received additional training on sexual harassment in 1998. Plaintiff also recalls being trained on sexual harassment every couple of years. Plaintiff understood that she could report to a manager or a human resources officer if she was offended by inappropriate conversation or touching.

Defendant Caplinger was hired by Westinghouse in 1970. He was transferred to the

Carlsbad, New Mexico site in 1991. Caplinger was also trained on Westinghouse's sexual harassment policy and received numerous training and refresher courses during his nine years of employment at the Carlsbad site.

Plaintiff claims that Defendant Caplinger sexually harassed her. At the time of the events giving rise to Plaintiff's claims, her immediate supervisor was Keith Nelson, but her senior manager was Defendant Caplinger. On August 28, 2000, Plaintiff met with Caplinger in his office. The office door was closed but was not locked. There was a window situated such that any person walking by was able to see into the office. The meeting lasted for approximately two hours.

During the meeting Caplinger began discussing the Hindu religion. He then began talking about the Kama Sutra book. Caplinger asked Plaintiff how she felt about her shoulders then asked her several questions about her breasts. Plaintiff began responding to these questions by stating "I'm fine." Caplinger's questions proceeded anatomically from Plaintiff's chest to her navel, pubic region, and genitalia. The questions sought information on size, color, and operation of these various parts of Plaintiff's body and inquired of Plaintiff how she felt about these parts of her body. Caplinger then questioned Plaintiff on her sexual history and her level of satisfaction with her husband. Caplinger spoke of masturbation and other sexual topics. At times during the meeting, Caplinger got very close to Plaintiff and asked her how close would be too close.

Plaintiff did not get up and leave the office during the meeting. At the times Caplinger was close to her, she worried that he would touch her if she stood up. Additionally, Plaintiff was concerned that she would lose her job if she walked out of the meeting.

In addition to the above incident, Plaintiff alleges that, on one occasion prior to this

incident, Caplinger rubbed Plaintiff's shoulders while Plaintiff was standing up. Plaintiff sat down, and Caplinger stopped.

Plaintiff presents evidence suggesting that at least two other female Westinghouse employees were sexually harassed by Caplinger. Heather Evans was employed by Westinghouse in Carlsbad, New Mexico in August and September of 1993. Caplinger was Ms. Evans' supervisor. Ms. Evans avers that Caplinger called her into his office during this time to discuss a paper Evans was preparing for presentation. According to Ms. Evans, Caplinger asked her what she intended to wear when presenting the paper and remarked that she should not want the men in the audience wondering about certain aspects of the pubic region of her body. She states that Caplinger then recommended that she masturbate prior to her presentation to address any problems with nervousness. According to Ms. Evans, Caplinger brought up other sexual issues and kept her in the meeting for approximately one to one and a half hours.

Within a few days, Ms. Evans reported the incident to a supervisor and a human resources manager. The day after reporting the incident, Ms. Evans was called into the human resources manager's office to meet with the manager and Caplinger. Caplinger apologized for saying anything that may have made Ms. Evans uncomfortable and offered to have someone else present her paper if she was too nervous to complete the project. Ms. Evans was then transferred to work under a different supervisor. Caplinger characterizes this incident as a complaint by Evans that he had used improper language.

Alisa West was employed by Westinghouse in Carlsbad, New Mexico in 2000 under the supervision of Caplinger. Ms. West maintains that Caplinger offered to mentor her on her career development and began meeting with her on a regular basis. According to Ms. West, after several

meetings Caplinger began making sexual remarks and asking personal questions similar in nature to those asked of Plaintiff and Ms. Evans. Ms. West avers that Caplinger told her that he needed to know more about her in order to mentor her, that she needed to be able to have adult conversations regarding sexual matters, and that an inability to have these types of conversations would hinder her development and ability to obtain a management level position within the company. Ms. West did not report these incidents until after Plaintiff reported the incident that is at issue in this case.

Plaintiff filed an amended complaint in this action containing four counts. The first count alleges sexual harassment, the second count alleges false imprisonment, the third count alleges assault and battery, and the fourth count alleges negligent retention. Defendants filed the instant motion for summary judgment arguing that all counts should be dismissed. They urge that the first count should be dismissed because Plaintiff failed to exhaust her administrative remedies, because the conduct alleged by Plaintiff was not sufficiently severe or pervasive to constitute a hostile work environment and, with regard to Defendant Westinghouse, it is entitled to assert the affirmative defense articulated in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998). Defendants assert that they are entitled to summary judgment on Plaintiff's claim for false imprisonment because, as a matter of law, Plaintiff cannot show the requisite restraint to prevail on this claim. As with the false imprisonment claim, Defendants contend they are entitled to summary judgment on the claims for assault and battery because Plaintiff cannot prove all the elements of these claims. Finally, Defendant Westinghouse argues that it is entitled to judgment as a matter of law on Plaintiff's claim for negligent retention because Plaintiff cannot show that she was sexually harassed or that it was reasonably foreseeable that she would be sexually

harassed.

**DISCUSSION**

I. PLAINTIFF'S SEXUAL HARASSMENT CLAIM

    A. <u>Was Plaintiff Required to Exhaust Administrative Remedies in Order to Bring Her Claim for Sexual Harassment?</u>

Defendants argue that Plaintiff's claim for sexual harassment must fail as a matter of law because Plaintiff failed to exhaust her administrative remedies. Parties do not dispute that Plaintiff neither filed a complaint with the EEOC nor with the New Mexico Human Rights Commission. Plaintiff, however, asserts that she is entitled to bring her claim under state tort law. Defendant counters that there is no recognized tort for sexual harassment in New Mexico.

The law in New Mexico is clear that a plaintiff states a valid common law tort claim when she alleges sexual harassment even if she has not pursued a claim or exhausted her administrative remedies under Title VII or under the New Mexico Human Rights Act. <u>See</u> <u>Coates v. Wal-Mart Stores, Inc.</u>, 976 P.2d 999 (N.M. 1999); <u>Gandy v. Wal-Mart Stores</u>, 872 P.2d 859 (N.M. 1994); <u>Beavers v. Johnson Controls World Services, Inc.</u>, 901 P.2d 761 (N.M. App. 1995); <u>Phifer v. Herbert</u>, 848 P.2d 5 (N.M. App. 1993) <u>overruled on other grounds by</u> <u>Spectron Development Laboratory v. American Hollow Boring Co.</u>, 936 P.2d 852 (N.M. App. 1997). Defendants argue that Plaintiff did not allege one of the common law torts such as Intentional Infliction of Emotional Distress (IIED) or Prima Facie Tort and that New Mexico does not recognize a common law tort of sexual harassment. Whether or not New Mexico recognizes a separate common law tort of sexual harassment is not at all clear. <u>See</u> <u>Coates</u>, 976 P.2d at 1002; <u>Beavers</u>, 901 P.2d at 769; <u>Deflon v. Danka Corp., Inc.</u>, 2001 WL 13260, \*\*12 No. 99-2239 (10th Cir. Jan. 5, 2001) (unpublished opinion). What the New Mexico courts have recognized is that a plaintiff

states a claim for IIED or Prima Facie Tort by alleging sexual harassment. See Phifer, 848 P.2d at 8.

Plaintiff in this case clearly alleged sufficient facts to state a claim for one of the more common law intentional torts. Additionally, Plaintiff's amended complaint, at paragraph 17, specifically alleges that violation of the public policy against sexual harassment in the work place gives rise to a cause of action in tort. This put Defendants on sufficient notice that Plaintiff is alleging a common law tort claim based on her allegations of sexual harassment, and such a tort claim is recognized in New Mexico without regard to whether a plaintiff has exhausted her administrative remedies under Title VII or the New Mexico Human Rights Act. Therefore, Defendants are not entitled to summary judgment with regard to this claim on the grounds that Plaintiff failed to exhaust her administrative remedies.

    B.    <u>Is the Conduct Alleged by Plaintiff Sufficiently Severe or Pervasive to Constitute a Hostile Work Environment?</u>

Courts have recognized two categories of sexual harassment under Title VII. The first category, *quid pro quo* harassment, occurs where specific benefits of employment are conditioned on sexual demands by the victim's supervisor. Ball v. Renner, 54 F.3d 664, 665 n.2 (10th cir. 1995). The second category, hostile environment harassment, occurs where a supervisor's or co-worker's sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). For sexual harassment based on hostile work environment to be actionable, the harassing conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Id.;

Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000 (10th Cir. 1996).

Defendants' motion argues that, even if Plaintiff is permitted to proceed with her claim for sexual harassment in spite of her failure to exhaust her administrative remedies, her claim is not viable because her allegations fail to establish the presence of a hostile work environment. As noted above, it is not clear whether New Mexico recognizes a specific common law tort of sexual harassment. Assuming such a tort is recognized, it is not clear that the elements of the tort would mirror the requirements for showing a hostile working environment under Title VII. Neither party has offered argument or authority on this issue.

If Plaintiff's claim is characterized as a claim for IIED or a claim for prima facie tort, Plaintiff's proof requirements will be based on the elements of these torts. Neither party has presented argument or authority regarding the elements of these torts and whether Plaintiff's evidence is sufficient to create a fact issue with regard to each element of these torts. For this reason alone, Defendant is not entitled to summary judgment on Plaintiff's claim for sexual harassment.

Even if the Court assumes that there is a common law tort of sexual harassment recognized in New Mexico, the elements of this tort are coextensive with the proof requirements for hostile work environment sexual harassment under Title VII. Since this is the only claim stated by Plaintiff in Count I of her amended complaint, Defendants are not entitled to summary judgment on this claim. Defendants essentially argue that the incident alleged by Plaintiff in which Caplinger supposedly made his sexual remarks and asked Plaintiff personal, sexual questions was not sufficiently pervasive or severe to unreasonably interfere with Plaintiff's work performance.

The Tenth Circuit has recognized that a single incident of sexual harassment will not be

considered pervasive because it does not meet the frequency analysis. Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (1998). However, a single incident, if sufficiently severe when considering the totality of the circumstances, may be enough to create an abusive environment. Id. A reasonable jury could find, based on the evidence currently before the Court, that Plaintiff was subjected to a hostile work environment. Therefore, Defendants' argument that they are entitled to summary judgment on Plaintiff's sexual harassment claim because the alleged conduct is not sufficiently severe must fail.

      C.      Is Defendant Westinghouse Entitled to Summary Judgment Based on the Defense Articulated in Faragher v. City of Boca Raton, 524 U.S. 775 (1998)?

Under Title VII, an employer is subject to vicarious liability to victimized employees for an actionable hostile environment. Faragher, 524 U.S. at 807. When a plaintiff's claim does not involve any tangible adverse employment action, an employer may raise an affirmative defense by showing that the employer exercised reasonable care to prevent and correct any sexually harassing behavior and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities to avoid harm. Id. The employer bears the burden of making this showing by a preponderance of the evidence. Id.

As noted above, this is not a case involving a Title VII sexual harassment claim. Rather, this case involves a state common law tort claim. It is not clear that vicarious liability or the Faragher defense is applicable to this claim, and neither of the parties has briefed the Court on this issue. Assuming that there is vicarious liability for the common law tort and that the affirmative defense is available, Defendant Westinghouse has presented a plethora of evidence with regard to their efforts to prevent and correct sexual harassment. Westinghouse, however, has not met its

burden of showing by a preponderance of the evidence that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to avoid harm.  Finally, the Faragher defense requires a determination of reasonableness and lack of reasonableness that, in this case, presents a fact issue not appropriately disposed of on summary judgment.  Therefore, Defendant Westinghouse is not entitled to summary judgment on Plaintiff's sexual harassment claim based on the affirmative defense delineated in Faragher.

II.     PLAINTIFF'S CLAIM FOR FALSE IMPRISONMENT

The tort of false imprisonment involves an unlawful interference with the personal liberty or freedom of movement of another.  Diaz v. Lockheed Elec., 618 P.2d 372, 374 (N.M. App. 1980).  The tort does not require that a person be held in custody or jail in order to show the element of restraint.  Id.  "The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which induce reasonable apprehension that force will be used if the plaintiff does not submit and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries."  Id.

Defendants argue that, as a matter of law, Plaintiff fails to show sufficient restraint to sustain her claim for false imprisonment.  Specifically, Defendants contend that, even assuming Plaintiff's allegations are true, Plaintiff was free to leave Caplinger's office on August 28, 2000, and Caplinger did nothing that would induce a reasonable apprehension in Plaintiff that force would be used if Plaintiff attempted to leave.  Defendants urge that Plaintiff's only allegations with regard to the restraint are that she feared she would suffer emotional harm or adverse job consequences if she left Caplinger's office.

Plaintiff's deposition testimony states that during the August 28, 2000 incident, Caplinger

9

was at times very close to Plaintiff and Plaintiff feared that Caplinger would touch her if she attempted to get out of her chair or tried to leave Caplinger's office. I find that this raises a sufficient issue of material fact with regard to the issue of sufficient restraint to deny Defendant's motion for summary judgment on Plaintiff's claim for false imprisonment.

III.   PLAINTIFF'S CLAIMS FOR ASSAULT AND BATTERY

A battery is an unpermitted contact. Sanford v. Presto Mfg. Co., 594 P.2d 1202, 1203 (N.M. App. 1979) overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148 (N.M. 2001). The gist of the action is not the hostile intent of the defendant, but the absence of a plaintiff's consent to the contact. Id. An assault is conduct that causes another person to reasonably apprehend she is in danger of an immediate unpermitted contact. Baca v. Velez, 833 P.2d 1194, 1196 (N.M. App. 1992).

Defendants assert that there is insufficient evidence of an unpermitted contact to support Plaintiff's claim for battery. Plaintiff's deposition testimony avers that Caplinger rubbed Plaintiff's shoulders on a single occasion and that Caplinger walked away when Plaintiff sat down. Defendants advance that this contact does not rise to the level of the contact necessary to sustain a claim for battery. In making this assertion, Defendants are arguing the facts of the case and their interpretation of those facts. The issue, however, is not whether the Defendants or even the Court believes this contact was a battery but whether any reasonable jury could find that Caplinger's conduct amounted to a battery. I find that there is a sufficient dispute of material fact with regard to the issue of consent to preclude summary judgment on Plaintiff's battery claim.

Defendant makes a similar argument with regard to Plaintiff's assault claim. As noted earlier, Plaintiff's deposition testimony asserts that during the August 28, 2000 meeting in

Caplinger's office, Caplinger was at times very close to Plaintiff such that she feared he might touch her. This testimony raises a sufficient dispute of material fact such that summary judgment on Plaintiff's assault claim is inappropriate.

IV.   PLAINTIFF'S CLAIM FOR NEGLIGENT RETENTION

The tort of negligent retention of an employee is based on an act or omission by the employer. F & T Co. v. Woods, 594 P.2d 745, 747 (N.M. 1979). An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another. Id. A plaintiff must prove that it was foreseeable that the retained employee would cause the harm allegedly suffered by the plaintiff. Id. at 749. Foreseeability is ordinarily a question of fact to be resolved by the trier of fact. Id. at 748.

In Pittard v. Four Seasons Motor Inn, Inc., the defendant's employee sexually assaulted a guest at defendant's hotel. 688 P.2d 333 (N.M. App. 1984). There was evidence in the record that on two occasions prior to the assault, the employee had been intoxicated at the work place. Id. at 340. On one of these prior occasions, the employee had become violent and disruptive with other employees. Id. Other hotel employees were aware that the particular employee continued to consume alcohol during work hours. Id. at 340-41. The employee was retained in a position in which he was not closely supervised, had access to alcohol, and had contact with hotel guests. Id. The court found that the plaintiff had presented sufficient evidence that the defendant was aware or should have known that the employee had a drinking problem and a propensity for violence such that the issue of negligent retention should have gone to a jury. Id. at 340-41.

Plaintiff's evidence in this case suggests that on one occasion prior to Caplinger's alleged conduct toward Plaintiff on August 28, 2000, another employee of Defendant Westinghouse

11

complained that Caplinger had engaged in similar conduct toward her. This evidence in conjunction with other evidence offered by Plaintiff is sufficient to create a fact issue precluding summary judgment on this claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Docket No. 23] is hereby DENIED for the reasons set forth this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE